Eric Baum NY#2591618 (Pro Hac Vice Pending)
Andrew Rozynski NY#5054465 (Pro Hac Vice Pending)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
         arozynski@EandBLaw.com


William A. Richards #013381
Alan S. Baskin #013155
Nicole C. Davis #020138
David E. Wood #021403
Leslie Ross #027207
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
         alan@baskinrichards.com
         ndavis@baskinrichards.com
         dwood@baskinrichards.com
         lross@baskinrichards.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Lotz and Julie Lotz, a married couple, | **Case No.** |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| Northwest Hospital, LLC, doing business as, Northwest Medical Center, a Delaware limited liability company, | |
| Defendant. | |

Plaintiffs Dennis Lotz and Julie Lotz (collectively "Lotz"), by and through their undersigned counsel, Eisenberg & Baum, LLP, and Baskin Richards PLC, as and for their respective claims against Defendant Northwest Hospital, LLC, doing business as Northwest Medical Center in Tucson, Arizona ("Defendant"), hereby allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs Dennis Lotz and Julie Lotz are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication. Defendant, Northwest Medical Center, doing business in Tucson, Arizona, discriminated against Plaintiffs by refusing to provide auxiliary aids and services to Plaintiffs despite Plaintiffs' requests for effective communication. Defendant discriminated against Plaintiffs by failing to provide onsite ASL interpreter services and by requiring the Plaintiffs to rely upon other means of communication that are inadequate for the medical treatment required by Plaintiffs. Plaintiffs bring this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiffs effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services. Plaintiffs seek declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and its implementing regulations, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116, and its implementing regulations, 42 C.F.R. Part 92, as well as the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*; and other state and federal common law rights.

2. Defendant has demonstrated through its interactions with Plaintiffs that it has adopted a policy and/or a pattern and practice of refusing to provide ASL interpreters for deaf patients, and that this decision, on information and belief, is based on purely financial considerations.

2

3. Defendant has further demonstrated through its interactions with Plaintiffs that Defendant's staff is not properly trained regarding how to identify when live, in-person interpreter services are required for effective communication with deaf patients and their companions, and when other forms of communication offer inadequate and ineffective communication for a deaf patient.

4. Defendant's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures and practices that deprive deaf and hard of hearing individuals and their hearing, deaf and hard of hearing companions of the opportunity to be full partners in their receipt of health care. Plaintiffs bring suit to address these discriminatory practices, obtain relief against further, future discrimination, and obtain relief for the damages caused by the Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

5. Plaintiffs Dennis Lotz and Julie Lotz are married individuals who have at all material times to this Complaint resided in Pima County, Arizona. They are profoundly deaf, communicate primarily in ASL, are substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, the Affordable Care Act and the AzDA, and require a live, onsite, qualified ASL interpreter to communicate effectively in medical settings. Plaintiff Dennis Lotz was a patient, and Plaintiff Julie Lotz was his companion, at Defendant's Northwest Medical Center, where they were denied appropriate auxiliary aids and services for their disabilities despite their requests to facilitate effective communication between Mr. and Mrs. Lotz and Defendant's employees and staff during Mr. Lotz's medical treatment in May of 2015.

6. Defendant Northwest Medical Center is an Arizona acute care hospital registered and doing business in the State of Arizona. Defendant's hospital is located in Tucson, Arizona. At all times hereinafter mentioned, Defendant was and still is licensed and doing business in the State of Arizona, with a principal place of business in Tucson, Arizona.  Defendant is responsible for actions and omissions occurring in Pima County, State of Arizona from which the claims in this action arise.

7. Defendant's facility, Northwest Medical Center, is located at 6200 North LaCholla Blvd., Tucson, Arizona 85741, at which location actions and omissions giving rise to the claims in this Complaint occurred.

8. Defendant's Northwest Medical Center is a place of public accommodation as defined in 42 U.S.C. § 12181(7)(G) and A.R.S. § 41-1492(11)(f) and Defendant is, on information and belief, a recipient of federal financial assistance. Thus, it is subject to the requirements of the ADA, the Rehabilitation Act, the Affordable Care Act and the AzDA.

9. Defendant's website at www.northwestmedicalcenter.com/northwest-medical-center/patientrightsandresponsibilities.aspx lists the patient's rights and responsibilities. Included in these stated rights are:

    a. "Effective communication that provides information in a manner that you understand, in your preferred language with provisions of interpreting or translation services, at no cost, and in a manner that meets your needs in the event of vision, speech, hearing or cognitive impairments. Information should be provided in easy to understand terms that will allow you to formulate informed consent."

    b. "Care or services provided without discrimination based on age, race, ethnicity, religion, culture, ***language***, ***physical or mental disability***, socioeconomic status, sex, sexual orientation, and gender identity or expression." (emphasis added)

    c. "Participate in decisions about your care, including developing your treatment plan, discharge planning and having your family and personal physician promptly notified of your admission."

    d. "Receive information about the outcomes of your care, treatment and services, including unanticipated outcomes."

    e. "Receive information about benefits, risks, side effects to proposed care, treatment and services; the likelihood of achieving your goals and any potential problems that might occur during recuperation from proposed

4

care, treatment and service and any reasonable alternatives to the care, treatment and services proposed."

    f. "Receive assistance from a family member, representative or other individual in understanding, protecting or exercising the patient rights."

10. Defendant's website, at the same location, also indicates the responsibilities of the patient during the patient's stay at Defendant's facility. Without providing effective communication, it would have been impossible for Plaintiffs to satisfy these responsibilities, including:

    a. "Provide accurate and complete information concerning your present medical condition, past illnesses or hospitalization and any other matters concerning your health."

    b. "Tell your caregivers if you do not completely understand your plan of care."

    c. "Follow the caregivers' instructions."

    d. "Follow all medical center policies and procedures while being considerate of the rights of other patients, medical center employees and medical center properties."

11. Additionally, Defendant's website, in the same location, describes the patient's rights as they pertain to problem resolution. Patients at Defendant's facility have a right to "[e]xpress [their] concerns about patient care and safety to hospital personnel and/or management without being subject to coercion, discrimination, reprisal or unreasonable interruption of care and to be informed of the resolution process for [their] concerns."

## JURISDICTION & VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, 29 U.S.C. § 794 and Title III of the ADA, 42 U.S.C §§ 12181, *et seq.* In addition, this Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the parties all reside within this District and the acts giving rise to the causes of action asserted herein occurred in this District.

### STATEMENT OF FACTS

14.     On May 4, 2015, Mr. Lotz fell off a ladder while he was doing some work on his house. Mr. Lotz struck his head on the ground and lost consciousness, and received a severe head laceration.

15.     After Mr. Lotz regained consciousness, Mrs. Lotz drove him to the emergency room at Defendant's Northwest Medical Center. Upon signing in at the emergency room, Mr. and Mrs. Lotz, through handwritten notes, requested that Defendant's staff provide an onsite ASL interpreter for Mr. and Mrs. Lotz.

16.     However, Defendant's staff did not provide an onsite ASL interpreter, nor did they provide any auxiliary services such as Video Remote Interpreting ("VRI"[1]).

17.     Then, Mr. Lotz, while waiting in the triage area, was seen by a nurse practitioner. At this time, Mr. Lotz's vital signs were taken and his condition was evaluated by the nurse practitioner.

18.     Mr. Lotz was then seen by a doctor, who performed a physical evaluation on Mr. Lotz. Mr. and Mrs. Lotz again requested, through handwritten notes, that an onsite ASL interpreter be provided to them. However, Defendant's staff again denied this request, and Mr. and Mrs. Lotz were not provided with an onsite ASL interpreter or VRI services. The doctor had to resign to using handwritten notes to communicate with Mr. and Mrs. Lotz.

19.     Next, Mr. and Mrs. Lotz were taken back to another area, where Mr. Lotz's wound was cleaned and several staples were placed in his head to seal up his wound. Defendant's staff did not tell Mr. or Mrs. Lotz what procedure was going to be performed, what the risks would be, or what follow-up measures they would need to take. Due to the lack of effective communication, Mr. and Mrs. Lotz did not have the ability to ask Defendant's staff questions

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

about the procedure.

20. Because of the traumatic nature of Mr. Lotz's accident, without an onsite ASL interpreter, he had no way to communicate with Defendant's staff, no way of understanding his condition, the procedure that was performed, or whether it was successful. Additionally, because of the nature of Mr. Lotz's injury, and the resulting inability to communicate his medical history, it was essential that Mrs. Lotz be able to assist in Mr. Lotz's care. However, Mrs. Lotz was not able to assist in Mr. Lotz's care because no onsite ASL interpreter or suitable auxiliary service was provided.

21. After his procedure, Mr. Lotz was discharged from the emergency room. At no point during his approximately three-hour stay was he provided with onsite ASL interpreter services or VRI services.

22. Due to Defendant's refusal to provide an in-person, onsite ASL interpreter during Mr. Lotz's stay at Northwest Medical Center, Plaintiffs Dennis Lotz and Julie Lotz were denied adequate and effective communication.

23. Throughout Mr. Lotz's medical treatment, up to and including his discharge from Defendant's facility, he had little to no understanding of his medical conditions, the examinations he underwent, or of instructions for his follow-up care, due to Defendant's failure and/or refusal to provide effective auxiliary aids and services to accommodate his disability.

24. Defendant's denial of effective communication during Mr. Lotz's medical treatment caused Plaintiffs significant pain, suffering, and emotional distress. Mr. Lotz was frustrated, frightened, humiliated, and depressed because he could not effectively understand his medical providers, could not effectively communicate questions or obtain answers about his health, diagnosis, treatments, restrictions related to and prognosis for recovery as well as necessary follow-up treatments, resulting in his overall inability to meaningfully participate in his medical care.

25. As a result of the actions and/or inactions of Defendant and its physicians and/or staff, Plaintiffs Dennis Lotz and Julie Lotz were denied the same opportunities that are readily and routinely provided to hearing persons and their spouses to make decisions regarding

treatments and/or to give consent to such treatments.

## CONTINUING STATEMENT OF FACTS

26. Defendant's failure to provide onsite, qualified sign language interpreters made Plaintiff Dennis Lotz's medical care more difficult because it prevented effective communication between Plaintiffs and Defendant's staff.

27. As a result of Defendant's failure to ensure effective communication with Plaintiffs, Plaintiffs received care and services that were objectively substandard and that are inferior to care and services provided to patients and companions who can hear.

28. Defendant intentionally discriminated against Plaintiffs and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

29. Defendant's denial of effective communication during the medical treatment of Plaintiff Dennis Lotz caused Plaintiff Dennis Lotz significant pain, suffering, and emotional distress. Due to Defendant's refusal to provide effective communication, Plaintiffs and/or their family members, and companions did not meaningfully understand critical information about diagnoses, prognoses, and medication and/or treatment options, and at times Plaintiffs were forced to undergo procedures without understanding the risks and benefits thereof.

30. As alleged above, Plaintiffs put Defendant's staff on notice that communication was not effective by alerting them of their need for qualified, live ASL interpreters.

31. Yet, despite such notice, Defendant failed and/or refused to provide qualified, onsite ASL interpreters.

32. Rather, Defendant knowingly limited Plaintiffs to the communication the Plaintiffs could achieve through vague gestures, inadequate notes, and the few words Plaintiffs could understand through reading lips.

33. Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for the deaf and hard of hearing and speech impaired individuals that visit its medical facilities as either patients or companions of patients.

34. Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that failure to provide adequate and effective communication to the Plaintiffs could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional harms; could prevent the Plaintiffs from enjoying the right and ability to understand and participate in the medical care; and could expose the Plaintiffs to serious risks of physical harm and injury due to their inability to adequately understand the medical conditions, the treatments they were receiving or that were being recommended to them, and the best and most appropriate courses of action by the Plaintiffs to ensure long term recovery and health.

35. Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that the Defendant's failure and refusal to provide adequate and effective communication for Plaintiffs could result in poor or materially diminished patient care and outcomes contributing to long-term physical harms and requiring additional medical care.

36. Upon information and belief, Defendant refuses and/or fails to hire qualified, on-site sign language interpreters as a matter of policy, practice or procedure at its hospital and other facilities, and insists upon communication through such inadequate means of communication as handwritten notes, gestures, and/or lip reading in cases that may not be conducive for such use.

37. Upon information and belief, the refusal to offer on-site sign language interpreter services to Plaintiffs is the result of a policy or practice of Defendant to discourage the use of onsite interpreters without regard to whether other methods of communication will provide effective communication.

38. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct doctor-patient communication through a qualified Sign Language interpreter. Lip reading does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been

as low as 10% to 30%. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, because many deaf individuals, including Plaintiffs, have difficulty acquiring and communicating in English due to physical, environmental, and pedagogical factors. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition.

39. Reliance by deaf, hard of hearing, and speech impaired individuals upon family members to interpret medical communications for them is unwise and dangerous. Family members generally are not trained to act as interpreters, particularly in medical and hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying for and to the deaf or hard of hearing individual the complete and accurate content of medical communications. In addition, family members are generally too personally and emotionally involved with the deaf or hard of hearing patient to act impartially and with the emotional detachment that is necessary for qualified sign language interpreters, particularly in medical settings and communications.

40. Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to the Plaintiffs, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiffs could and would result in denial of the Plaintiffs' rights under law and in serious and material harm and injury to the Plaintiffs, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiffs in an intentional and/or deliberately indifferent violation of Plaintiffs' rights.

41. It is reasonably foreseeable that Plaintiffs will continue to visit Defendant's facility, either by choice or necessity, due to their medical history and the proximity of

Defendant's facility to the Plaintiffs' home.  Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, it is reasonably foreseeable that a denial of effective communication for Plaintiffs as a result of Defendant's actions, omissions, policies or practices will occur again.  Accordingly, Plaintiffs are aware of discriminatory barriers to access at Defendant's facilities and are thereby deterred from accessing Defendant's healthcare services because of the discrimination they have faced and expect to face in the future, even though they would do so if the discriminatory acts ceased.  Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

42.  Defendant's actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to the Plaintiffs. Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 1: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

43.  Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

44.  At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

45.  At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

46.  At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

47. Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

48. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

49. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

50. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E)

51. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

52. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

53. Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

54. Defendant discriminated against the individual Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities,

privileges, advantages, and/or accommodations of its place of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of the ADA.

55. Defendant further discriminated against the individual Plaintiffs by failing to ensure effective communication through the specific provision of qualified in-person interpreters.

56. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

57. Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

### COUNT 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

58. Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

59. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to the Defendant's conduct.

60. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendant's conduct.

61. At all times relevant to this action, Plaintiffs have had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act regulations at 45 C.F.R. § 84.3(j). Accordingly, they are individuals with a disability as defined under 29 U.S.C. § 708(20)(B), Section 504, as amended.

62. Pursuant to Section 504, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

63. Defendant has discriminated and continues to discriminate against the individual

Plaintiffs solely on the basis of their disability by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

64. Defendant further discriminated against the individual Plaintiffs by failing to ensure effective communication through the specific provision of qualified in-person interpreters.

65. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other Deaf patients and family members.

66. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

67. Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

68. Defendant's actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to the Plaintiffs. Therefore, to the extent the courts were to determine that punitive damages were recoverable under the Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

### COUNT 3: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

69. Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

70. At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. §§ 41-1492 *et seq.*, was in full force and effect and applied to Defendant's conduct.

71. At all times relevant to this action, Plaintiffs have had substantial impairment to

14

a major life activity of hearing and speaking and are qualified individuals with a disability within the meaning of AzDA, A.R.S. § 41-1492.

72. At all times relevant to this action, Defendant's facilities were and are places of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

73. AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

74. Discrimination under AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

75. Defendant discriminated against the individual Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its place of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of AzDA.

76. Defendant further discriminated against the individual Plaintiffs by failing to ensure effective communication through the specific provision of qualified in-person interpreters.

77. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional Deaf persons.

78. Plaintiffs are therefore entitled to seek and recover compensatory damages and injunctive relief for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

79. Plaintiffs are further entitled to an award of attorneys' fees, costs, and

disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

**COUNT 4:  VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557**

80. Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

81. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

82. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

83. At all times relevant to this action, Plaintiffs Mr. and Mrs. Lotz had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

84. At all times relevant to this action, Plaintiffs' primary language for communication was American Sign Language and not English; and as such Plaintiffs had limited ability to read, write, speak, or understand English, and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

85. At all times relevant to this action and upon information and belief, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

86. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

87. Defendant has discriminated and continues to discriminate against Plaintiffs solely on the basis of their disabilities and their limited English proficiency by denying them

meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

88. Defendant discriminated against the individual Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through properly functioning VRI machines.

89. On information and belief, the refusal to offer qualified on-site ASL interpreter services and/or properly functioning auxiliary aids and services is as a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters and VRI services without regard to whether such interpreter or VRI services will provide effective communication.

90. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiffs and other Deaf patients and family members.

91. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

92. Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act;

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that

denies individuals who are Deaf or hard of hearing, such as Plaintiffs, meaningful access to and full and equal enjoyment in Defendant's services or programs;

C. Order Defendant:

    i. to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing by failing to provide effective communication;

    ii. to implement a policy requiring that when a patient or other deaf individual determines that an on-site interpreter is required for effective communication, a fully qualified interpreter will be provided as soon as practicable in all services offered by Defendant;

    iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Hospital utilizes a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

    v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is

not appropriate in all medical situations;

    vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

    vii. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and AzDA;

D. Award to Plaintiffs:

    i. compensatory damages to Plaintiffs pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendant;

    ii. reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, and AzDA;

    iii. to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

    iv. interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v. any and all other relief that this Court finds just, necessary and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 4th day of May, 2017.

BASKIN RICHARDS PLC

/s/ William A. Richards
William A. Richards
Alan S. Baskin
Nicole C. Davis
David E. Wood
Leslie Ross
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003

*Attorneys for Plaintiffs*